All right. Thank you, Your Honor. I am Michael Nance representing Eric Woodberry. Mr. Woodberry was convicted of aiding and abetting the possession of a short barrel rifle during a crime of violence and a drug trafficking crime without any showing that he knew of the barrel length of the gun in question or that he was required to know it. This was a due process violation of basic criminal jurisprudence, which presumes a mens rea or knowledge requirement. Criminal statutes are presumed to require at least knowledge of their elements, factual underpinnings. The statute in question is one well known. It's 18 U.S.C. section 924 C. This was a sub 924 C 1 B 1, which mandates a 10 year prison sentence for its violation. That's five years greater than the general violation of 924 C, which mandates five years. It is a separate standalone crime, a greater offense than the general offense described earlier in the statute. As such, general criminal jurisprudence absent clear congressional intent to the contrary favors a mens rea. Mr. Nance, let me ask you a question. Why doesn't Dean versus United States control here with regard to a mens rea? Um, I, um, I don't know. I believe you back up and you say, Is it a Is it a separate statutory element? The O'Brien case says that it is. It's a It's a It's a It's a characteristic. It's a weapon characteristic, which makes it a separate separate element, a separate crime, a greater crime that has to be proved beyond a reasonable doubt. And then if you go back to the the the general presumption of a mens rea, uh, it it kicks in. It needs to require require that O'Brien itself did a did a statutory construction of the of this particular statute and distinguished it from the sentencing factors of C 1 A. Um, the O'Brien dealing with a topic that was essentially superseded by a lane later when the Supreme Court said in a lane that anything that increases the mandatory minimum has to be treated as an element. I don't know that anything actually, um, negated or superseded the basic finding of O'Brien regarding statutory elements. It is a statutory element. It is a separate offense, a standalone offense. Uh, the question is, does a mens rea, uh, apply in the absence of some clear congressional statement to the contrary? And doesn't Dean lay out factors like whether something's in the passive voice and whether the conduct would otherwise be innocent that we should look at to answer that question? Dean does do that. But Dean was was addressing the brandishing and discharge factors of the earlier part of the statute. The the, uh, our section that we're talking about is the is the following, uh, paragraph, subparagraph. The if the if the farm is possessed by a person and it's a short barrel rifle, it's a separate part of this. And subsequent to the Dean case, O'Brien specifically distinguished the two. There's a paragraph that I quoted in the in the briefing that specifically characterizes the earlier portions, the brandishing and the discharge as sentencing factors. The weapon characteristics, by contrast, are statutory factors in a separate crime. But wouldn't any factor that increased the mandatory minimum be treated as an element now? I mean, this distinction that they were drawing doesn't matter anymore, does it? In other words, the Dean, the Dean, uh, enhancement, if it increases the mandatory minimum, would have to be treated as an element, right? Uh, well, not necessarily. It didn't seem that that way in the O'Brien thing, a case of Right. Because it's before the Alene case that or Elaine that built on the Apprendi line of cases to say that anything like this has to be treated as an element, right? It should be treated as an element. That's correct. But it follows that if it's an element, uh, there should be a mens rea unless there's something specific in the in the statute, the rate of the statute that suggests otherwise, there's a presumption. What's the presumption worth if it's easily overcome? Not worth anything. Well, where do we get that presumption? Red Have sort of sets out the presumption, but talks about it in terms of conduct that would otherwise be innocent, which isn't the case here. Um, well, Congress apparently considered it in in, uh, in the way they distinguished the mandatory minimums. They made they specifically made toting a weapon during a crime. It's a five year mandatory consecutive. If it's got a short barrel, it's a mandatory 10. Why would they do that unless it mattered? There must be some suggestion of moral depravity, some incremental bit of moral depravity that applies to carrying a short barrel weapon to a crime scene. And that's reflected in the mandatory minimums that are so different. They're twice what the regular weapon would would carry. I don't know if I'm answering your question or not. I think because we're over time, maybe I'll just stop for now. Well, I have a question relating to something that you said, Mr. Nance, and that is, you talked about whether the extra time meant that Congress recognized some additional moral depravity, and, uh, that may be true. But my question is this, um, would it be true that all robbers who use a short barrel rifle, whether the barrel is 15 and a half inches or 13 inches or 16 inches, would know that a short barreled rifle would spread out the shot and be more dangerous? For any people in the vicinity who had resisted the robbers. And if that's true, why, why does it have to be shown here to meet this element that the barrel is precisely less than 15 inches? Well, first part of your question, I'll try to answer that. I don't know that robbers really think it through very carefully. The requirement is there because Congress imposes a distinction. Congress distinguished it. Congress thought it was a more, a more culpable thing. They did the same thing with the machine gun, the automatic weapon, 30 years there. And they've said that you, uh, an offender has to know, uh, the characteristic of the weapon. Um, I mean, otherwise we're talking strict liability and, and the, uh, the general, uh, uh, jurisprudence on that is, is negative. It's not favored except in public welfare type cases. Okay, well, I've taken you over your planned time, but all right. I appreciate the answer. Thank you. Thank you. So I guess now we'll hear from, uh, Ms. Becker, the government followed by Ms. Elliott making a rebuttal argument. Thank you, your honor. And good afternoon. May it please the court, Aaron Becker on behalf of the United States. Statutory language is clear. In order to hold a robber accountable for carrying a short barreled rifle during and, uh, in, uh, during and in relation to a crime of violence, like robbery, the government need not prove that the robber knew the characteristics of the firearm that brought it within the statute. Moreover, there is no canon of statutory construction that leads to a different conclusion beyond what is in the, the plain language of the statute. There are two cases that essentially control the outcome of this case. The first is of course, Dean that you've already referred to in Dean, the United States Supreme court, uh, determined with respect to a parallel provision of 924 C. And that is one, a three relating to discharge of a firearm that no mens rea attaches to that offense. Second in United States versus McDuffie, a 2018 case from this court, this court applied Dean as written and its motive analysis to determine that in bank robbery, the enhancement in the, um, that provides for a greater sentence. Uh, if someone is killed in the course of the offense, uh, applies and no mens rea is needed for that either, this court should apply the same reasoning and reach the same results. The government need not prove that a robber who brings a short barreled rifle to commit a robbery knew that it was a short barrel rifle. Instead, the government needs to prove only the mens rea inherent in the underlying offenses. First, the predicate offense here, that was possession of marijuana with intent to distribute and robbery. And second, the offense to which this sentencing enhancement attaches the 924 C use and carrying of a firearm during and in relation to the crime, which of course has its own mens rea as well. I heard Mr. Nance arguing that failure to add a mens rea requirement to the, um, short barreled rifle enhancement makes this crime a strict liability one. It does not. There are already in order to reach the short barreled rifle question for the jury to reach that question and must have already found beyond a reasonable doubt the mens rea and the predicate offense and in the base offense of 924 C. And in particular, with respect to Mr. Nance's client, who is charged as aiding and abetting, there are additional elements that go with that, uh, the way that that was charged as well. You've been calling this an enhancement, but it needs to be found by a jury, just like an element. So why are you calling it an enhancement? Thank you, Your Honor. I'm happy to clarify that you're completely correct. It does need to be found by a jury beyond a reasonable doubt. And the language that we hear in the Supreme Court cases in Dean and in O'Brien is really distinguishing between two different things. And I'm trying to draw a distinction between three different things as I tried to explain in my footnote. Footnote 9. Dean and O'Brien were looking at two separate questions, whether something is a sentencing factor or an element, and essentially treated the universe as those two things. A sentencing factor could be decided by a judge by a preponderance of the evidence, and an element needs to be found by a jury beyond a reasonable doubt. I'm characterizing the portions of 924C that are in A, 2, and 3, and B, 1, and 2 as sentencing enhancements, something that's somewhat in between those. Certainly the government has to prove it beyond a reasonable doubt to a jury and must allege it in the indictment, as we did here. However, that portion of the statute only applies if the jury first finds the base offense of 924C. And in McDuffie, this court described that as a sentencing enhancement and has used that language to describe something that the jury only reaches if they first find the base offense. But McDuffie also said it's a functional equivalent of an element, so I think it clarified that the terminology didn't really matter, right? Yes, Your Honor, I think that's exactly right. It did call it the functional equivalent of an element, and I think the important thing to know here is that over a long stretch of cases, the Supreme Court and this court have put forward two basic principles. The first principle is that we read Congress's legislation as it is written. And the second principle is that, in general, we do not make something criminal without some mens rea attaching. And the way to harmonize those two, and that we see throughout the cases, is that we attach a mens rea to an element if the mens rea is required in order to distinguish innocent conduct from wrongful conduct. That mens rea does not attach to every element of every crime. We see that throughout the criminal code. Indeed, we see it throughout individual statutes. For example, in Rahafe, although the Supreme Court held that the knowledge requirement has to apply not just to the possession of the firearm, but also to the person's status. They have to know their status that makes them ineligible. It did not go on to apply that, and there's no court I'm aware of that has applied that to the fact that the firearm moved in interstate commerce and crossed state lines or crossed international borders. There's certainly plenty of other examples. The one that I cited in my brief is Jefferson. This court has held, as have most others, if not all others, that the sentencing enhancement in 841 relating to an additional penalty, an additional mandatory minimum that applies if the substance is a particular substance and in a particular amount. There's no mens rea that applies to that, but it's clear that it is the functional equivalent of an element. It must be proven beyond a reasonable doubt. The reason for that, Your Honor, is Elaine. I think that you raised a really good point with respect to Elaine. That case, of course, held that the brandishing and the discharge elements of 924C are, in fact, elements and need to be proven beyond a reasonable doubt. It did not address whether they had a mental element to attach to them, and although that case certainly did not overrule O'Brien, certainly O'Brien is still good law for its conclusion, it certainly changed the analysis that led to the decision in O'Brien. Elaine, I think, stands for the proposition that if the mandatory minimum, if the floor of an offense, the floor sentencing that can be applied or the maximum is increased by a finding, that particular finding must be made by a jury beyond a reasonable doubt. Can I just stop you? As you described, as Raheif shows, there can be elements that don't have a mens rea. So I guess I'm still not understanding why you're invoking the enhancement language instead of just arguing that this is an element, but it's one of the elements that doesn't require a mens rea. And it would seem like you could apply deem to make that argument, but instead it seems like you're maybe adding an extra step. I'm not sure why. Your Honor, I guess I'm using enhancement because that's the way that practitioners use it, and it's the way that McDuffie describes this. But you're right in that there's no analytical distinction when you're thinking about what the government has to, to whom and how the government has to prove it. The question is, you know, what does the government have to prove? And again, there's no analytical distinction there. So if practitioners still use it, is that just, I mean, maybe I just didn't know that. So is that just a holdover from before Elaine? I can't speak to that. But what I can say is I think that it affects the way that individual, that indictments are written and that jury instructions are provided. So if you'll look at the jury instructions in this case with respect to both brandishing and the short-barreled rifle enhancement, the jury was instructed first to look at the base offense in 924C. And then it was asked to answer yes or no with respect to, first, whether the defendants brandished the firearm, and second, whether the firearm was, in fact, a short-barreled rifle. It did not instead charge one count of brandishing and one count of use of a short-barreled rifle and then have the possibilities of lesser included enhancement. But isn't brandishing an element? Brandishing is an element, correct. So that same structure could make this an element, too. I don't understand how the jury form tells us this is not like brandishing. It is like brandishing. I think it's exactly like brandishing. But you're calling this an enhancement instead of calling it an element. And I would call brandishing an enhancement, too. I think it's just a question of semantics, but I think that it's more a way of how a jury instruction is structured and how the charges are structured. Because the government, for example, charged in one count both the 924C base offense in A1 and also alleged in the same offense, as it would do in a drug case, the enhancement in A2 and the enhancement in B1. But analytically, I agree that they're treated the same as elements. And so, like with all other elements, there's no need to import a mens rea if the offense is clearly criminal without the mens rea, if there's already a mens rea in the offense. Am I answering your question? Yes, I think so. I'm just trying to figure out if there's any purpose of continuing to call anything an enhancement at this point. And I haven't been persuaded that there is, from what you said, but it seems like maybe the persuasive point is just people do it anyway, is what you're saying. I think it's useful in instructing a jury and talking about it, instead of needing to get into the question of lesser included offenses. I also think it allows these two enhancements to be considered with respect to a single offense, instead of as separate offenses that would be charged in two separate counts. But analytically, I don't think that there's a difference. I hope I'm answering your question. Unless there's other questions, the government would encourage this court or urge this court to affirm the convictions with respect to both Mr. Woodbury and Mr. Johnson. Thank you. Thank you, Ms. Becker. If there are no further questions from Judge Boo or from Judge Friedland, we'll proceed with rebuttal. Finally, we now turn to Ms. Elliott. We thank you for patiently awaiting your time in the sun. Thank you, Your Honor. It's very rainy here today, not much sun. I would like to draw the court's attention to a few rebuttal points. First, I would like to emphasize that this is not a case where this error, if it was error, to admit the mens rea element was harmless. The government's own witness said that it was not obvious that this was a short-barreled rifle. He had to take a portion or unscrew a portion of the rifle, as I understand it, to measure it. And there's no standard measurements or no guidance, so he put a yardstick or something down the barrel to show this. And he testified it would not be obvious that this was a firearm that violated the prohibition on a short-barreled firearm. The second point is that the Staples decision generally applies here and would apply a mens rea element to the statute. The third rebuttal point is I just want to note that Dean distinguishes O'Brien. I think this is no longer an issue. I think we can all agree that this is an element of the offense, but Dean distinguishes O'Brien at page 577 of that decision. I must admit that I don't know a lot about firearms, but I would like to address Judge Gould's comment about the inherent dangerousness of a short-barreled firearm. I was curious about that myself as to why this was a prohibited or far more heavily regulated type of weapon. And on page 4 of the reply brief, I have a citation to some ancillary authority that actually does not support the notion that it's a more dangerous weapon, but rather Congress enacted the statute because they perceived, I believe in the 30s, that short-barreled firearms were the choice for criminals, and they were easy to hide, and so they prohibited short-barreled firearms because you could put them under your coat. I could not find anything that indicated a short-barreled firearm was somehow obviously inherently dangerous. As to the innocent versus non-innocent conduct, I would direct this court to our arguments in reply regarding the failure to register a short-barreled firearm. And in six circuits, including this one, the court has found that if a person is charged with this failure to register offense, that the government must still prove that the defendant knew that it was a short-barreled firearm and subject to regulation. And that's United States versus Gergen in this circuit. I think the court should reject the argument that the mens rea element as to the other portions of the charge somehow obviates the need to find a scienter requirement here. And in that regard, I direct the court to Flores-Figueroa versus United States, which is a case where the Supreme Court considered whether there was an additional mens rea who applied to a person who was committing the listed predicate crime, but knowingly transferred or used without lawful authority a means of identification for another purpose. And there the court held that knowingly applied not just to the defendant's possession or use of the fake identification card, but also to the fact that the identity on the card was of another person. And there the court applied what it called the rule of statutory interpretation, that when there is an express mens rea element as to one element of the offense, it applies to all of the elements of the offense. So in this case, the trial court erred in removing that knowledge requirement. But it tells us that that's not true, though, right? Because there is no requirement of mens rea for the traveling and interstate commerce. I agree that there are conflicting decisions. And, of course, probably one could find a rule of statutory construction that would apply to either construction of the statute. But in my view, Flores-Figueroa is more because it involves the predicate offense. And then the underlying question of whether you knew it was the identity of another person is more applicable here, Your Honor. Finally, the government has not mentioned them in their argument, but the government cited two, three decisions from other circuits, which we have distinguished in our reply brief. But I would commend the court to the dissenting opinion of now Justice Kavanaugh in the Burwell case, which I think accurately sets forth our arguments. I'm out of time, but I would like to remind the court that there is a second issue for Mr. Johnson in this case. And I know the court in its order before argument wanted to concentrate on this first issue, but we're not conceding that. Why don't you take another two minutes and cover your other issue? Thank you, Your Honor. The court should reverse here because, as to Mr. Johnson, the court improperly told the jury that if it found beyond a reasonable doubt that Johnson robbed a legal marijuana dispensary in Washington as a matter of law, this was commerce over which the United States has jurisdiction. And I have to concede that this is a complicated question of how to instruct the jury after Taylor. But Taylor is not a case that removes the question of commerce from the jury's purview. It is a sufficiency case. It's somewhat confusing because the court does suggest that as a matter of law, if you rob someone who is engaging in the illegal marijuana trade, the element of affecting commerce over which the United States has jurisdiction has been satisfied. But I don't think the court is correct in informing the jury of that fact. I think the court can inform the jury that if it finds that the robbers in any particular case targeted a drug dispensary because there were drugs there and because they were likely to have cash, you may have satisfied the element. But, of course, Taylor doesn't say anything about and, quite frankly, leaves open the question of whether or not a legal business falls under the Taylor. Taylor has a quote that seems to be almost exactly what the jury was told here. The quote in Taylor is under rage. The market for marijuana, including its interstate aspects, is commerce over which the United States has jurisdiction. So that's illegal. And so given that the judge just quoted what the Supreme Court said, I don't know how that could be an error. Because we don't tell juries what amount of evidence is sufficient to prove an element. We leave that to the jury's determination. And it seems like at this point the element is, was this a trade in marijuana? And that's it. Yeah, and I might agree with you. I haven't sat down and thought about how to draft the correct instruction, Your Honor. But that was not what the jury was informed here, the elements that were set forth here. I mean, there still is an element in the statute that it affects commerce that has to be submitted to the jury. And here the court, I mean, the jury instruction to me is somewhat confusing because it has that element. But then the judge goes on to sort of take it away in the one line which you have quoted from the jury instruction, which says you have, so the fourth element is the robbery affected or could have affected commerce over which the United States has jurisdiction. This is ER 69. But then it goes on in the next paragraph, skipping one paragraph. The market for marijuana, including interstate aspects, is commerce over which the United States has jurisdiction, which seems to be sort of a summary judgment kind of finding. Well, the jury still has to find that it was affecting a market for marijuana. But it does. I don't think that is correctly summarized here in the jury instructions. In fact, the judge has told them this was commerce over which the didn't tell them that it had to find it was it was marijuana. No. So there still is something for the jury to find under Taylor and Raich. Yes. But here the court removed that. In my view, the line 18 in that instruction removed that question from the jury by instructing them the market for marijuana, that this was a market for marijuana and it was commerce over which the United States has jurisdiction. I agree. It's a very minimal test. But I don't I in our view, the proper instruction is that that has been approved by. And I understand it's not law, but the model instruction which was proposed by the defense. Well, I think. Thank you very much for the time. You're welcome. I think I may have. Screwed something up by proceeding informally because your argument about commerce, it wasn't really rebuttal argument, I don't think, but what the government said. And therefore, I feel like I need to ask Miss Becker, if you want to address the commerce issue, I'll give you two minutes for that. And then we will ask Mr. Nance or Miss Elliott to close the argument with up to 30 seconds responding to you. Thank you, Your Honor. I would just make two brief points. One, of course, is that the issue that was raised by Mr. Johnson in his briefing goes to whether or not interstate commerce is what the jury should have been told. And Taylor holds that that is not necessary. In fact, any plain reading of the statute demonstrates that the government need not address whether the impact was on interstate commerce. Rather, as Miss Elliott now appears to concede, the government had to prove whether or not it affected or could have affected any kind of commerce over which the United States had jurisdiction. And second, the court did exactly what it needed to do here. It gave the jury four elements, the fourth of which was that the robbery affected or could have affected commerce over which the United States has jurisdiction. The jury has no idea what commerce over which the United States has jurisdiction is. And so Judge Jones quite rightfully defined that for the jury and told them that it included the market for marijuana. Could Judge Jones have given a broader instruction since I had included interstate commerce and foreign commerce? Sure. But that had nothing to do with this case and so would have been overbroad. The judge properly instructed the jury and then the jury had to take that definition and apply it to whether or not commerce was affected here and whether the business at issue when your cannabis was, in fact, in the market for marijuana. Thank you. Thank you, Ms. Becker. Now, as to any rebuttal briefly of that, Ms. Elliott? No, Your Honor. I think I've made my point. Thank you. I think I want to thank all of the counsel here for their excellent arguments. And it just goes to show that advocates in the state of Washington are second to none. But we'll also say that all the advocates during today are going to be excellent, whether they're from Washington or not. But I always get little things of, I remember being an advocate here, so I really appreciate your arguments. Without further ado, the two cases of U.S. v. Woodbury and U.S. v. Johns shall now be submitted and the parties will hear from the court in due course. Thank you. Thank you.
judges: Gould, Friedland, Bough